IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF ARKANSAS
                  TEXARKANA DIVISION

**JEROME B. EASTER**                                              PLAINTIFF

        v.            Civil No. 05-4029

**HARTFORD LIFE AND ACCIDENT
INSURANCE CO. and FLYING J. INC.**                                DEFENDANTS


                        **O R D E R**

    Now on this 31st day of August, 2006, comes on for consideration the captioned matter, including **Defendant Flying J. Inc.'s Motion To Dismiss** (document #18), and plaintiff's appeal of the administrative decision of defendant Hartford Life and Accident Insurance Co.

    1.   Plaintiff Jerome B. Easter ("Easter") was a participant in an ERISA benefits plan (the "Plan") maintained and administered by his employer, Flying J. Inc. ("Flying J.") and insured by Hartford Life and Accident ("Hartford"). He alleges that he was wrongfully denied long term disability benefits ("LTD"). The parties agree that Easter has exhausted his administrative remedies with regard to this claim, and that it is now ripe for judicial appeal.

    2.   Turning first to the motion of Flying J., the Court finds that it has merit. A review of the Administrative Record reflects that although Flying J. is the Plan Administrator, claims administration was handled by Hartford. Flying J. played no part in the decision to deny Easter benefits, and Easter's claim

against it should be dismissed.  See **Layes v. Mead Corp.**, **132 F.3d 1246 (8th Cir. 1998)**.

3. Easter's claim against Hartford is in the nature of a judicial appeal from an administrative decision.  As such, the facts this Court may consider are those contained in the Administrative Record[1], and the standard for review is dictated by the terms of the Plan.

Denial of ERISA benefits is "reviewed on a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." **Firestone Tire & Rubber Co. v. Bruch**, **489 U.S. 101, 115 (1989)**.  If the administrator has discretionary authority, its eligibility decisions are reviewed for abuse of that discretion.  **Groves v. Metropolitan Life Insurance Co.**, **438 F.3d 872 (8th Cir. 2006)**.

The Plan in this case provides that, upon submission of the required documentation, "[w]e will then determine if you are insurable under the plan." It also provides that a beneficiary becomes eligible to receive benefits when "you submit Proof of Loss satisfactory to us."  "We" and "us" refer to Hartford.  Such

---

[1] The parties were not able to agree on the contents of the Administrative Record, and the Record as filed contains all documents which either party believed it should contain.  The parties reserved the right to object to consideration of some portion of the Record in their briefs, but neither party raised any such objection.  The Court has reviewed the entire Record in making its decision, and notes that it finds nothing in that portion of the Record which Easter felt should be included but Hartford did not, that is determinative of the outcome of this appeal.

provisions have been held sufficient to give the claims administrator discretionary authority to determine eligibility, **Ferrari v. Teachers Ins. and Annuity Ass'n, 278 F.3d 801 (8th Cir. 2002)**, and the Court will, therefore, review Hartford's benefits decisions for abuse of discretion.

The abuse of discretion standard has been described as follows:

> In applying an abuse of discretion standard, we must affirm if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision. A reasonable decision is fact based and supported by substantial evidence. We may consider both the quantity and quality of evidence before a plan administrator. And we should be hesitant to interfere with the administration of an ERISA plan.

**Groves, 438 F.3d 872, 875** (internal citations and quotation marks omitted).

"Substantial evidence" is "more than a scintilla but less than a preponderance." **Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003)**.

Although abuse of discretion review puts a heavy burden on a participant whose benefits have been terminated, it does not amount to "rubber-stamping the result." A termination decision must be reasonable, i.e., "supported by substantial evidence that is assessed by its quantity and quality." **Torres v. UNUM Life Insurance Co. of America, 405 F.3d 670, 680 (8th Cir. 2005)**.

4. With the foregoing principles in mind, the Court has

examined the Administrative record, and finds the following facts relevant to Easter's claim:

- * Up until June 27, 2002, when it appears he experienced a "light stroke" at work, Easter was a pre-cook for Flying J. Inc. His job required continuous standing, walking, sitting, balancing, stooping, kneeling, and lifting up to 30 pounds.

- * On July 27, 2002, Easter applied for LTD, alleging an onset date of June 27, 2002.

- * On July 30, 2002, Michael Downs, M.D., completed a Physician's Statement to the effect that Easter could perform his usual work, full-time, so long as he did no heavy work.[2]

- * On September 26, 2002, James Hurley, M.D., completed a Physician's Statement, reporting a diagnosis of non-cardiac chest pain, and finding no impairment.

- * On November 15, 2002, Charles Marrow, M.D., completed a Physician's Statement, listing diagnoses of diabetes

---

[2] A note in the Administrative Record (page AR 286) dated September 13, 2002, and stating "patient has no condition that makes him eligible for disability" also appears to be from Dr. Downs, based on the handwriting. Hartford, however, interpreted the illegible signature on the note as being that of Dr. Oge, and the Court believes that could well be the case. Both were treating physicians, and as such, both opinions are important in resolving this dispute. Regrettably, the Court's work in reaching a just resolution has been hampered by the poor handwriting of the doctors who treated Easter.

mellitus; diabetic nephropathy[3]; CVA[4]; cerebral infarct[5]; congestive heart failure; orthopnea[6]; chest pain; ankle edema; and several other diagnoses which are illegible. He limited Easter's standing to 20 minutes; walking to 50 feet; lifting and carrying to 10 pounds, as well as several other limitations which are illegible. He indicated that Easter became unable to work because of these impairments in June, 2002.

* Easter's LTD claim was denied by letter dated April 25, 2003. Hartford concluded that Easter's obesity, esophagitis and diabetes were subject to the Plan's pre-existing condition exclusion, and that there was insufficient documentation that any of his other physical conditions was disabling.

* On June 10, 2003, Roger House, M.D., completed a Physician's Statement noting that Easter "is unable to participate in gainful employment at this time," and noting that "[t]he disability is permanent." He listed

---

[3]This word, practically illegible on the APS, was interpreted as "retinopathy" by the medical consultant.

[4]According to Stedman's Medical Dictionary, 26th Edition, which is the source of all medical definitions in this Order, a CVA is a cerebrovascular accident, or stroke.

[5]An area of dead tissue resulting from a sudden insufficiency of blood supply.

[6]Difficulty in breathing caused or aggravated by lying flat.

the following disabling diagnoses: HBP[7]; NIDDM[8]; GERD[9]; CVA; angina; arthritis; and possible seizures.

* On June 11, 2003, Charles Marrow, M.D., completed a Physician's Statement, placing the following restrictions on Easter's physical activity: sitting, standing, walking, pushing, pulling, keyboarding, or lifting/carrying more than ten pounds were restricted to two hours per day; no climbing, kneeling, squatting, bending or stooping. Dr. Marrow found this level of disability to be permanent. He listed the following disabling diagnoses: right fronto-parietal cerebral infarction; COPD[10]; diabetes mellitus; CHD[11] with angina; obesity; arthritis of knees and LS[12] spine.

* On August 29, 2003, Hartford again denied Easter's LTD claim. The denial was based on the Physician's Statements of Dr. Marrow and Dr. House, and the review of a medical consultant, Joseph Gaeta, M.D. Dr. Gaeta focused on contradictory statements from the various doctors who had examined and treated Easter, some

---

[7]High blood pressure.

[8]Non-insulin dependent diabetes mellitus.

[9]Gastro-esphageal reflux disease.

[10]Chronic obstructive pulmonary disease.

[11]Coronary heart disease.

[12]Lumbo-sacral.

finding him able to work, some finding that he could not. Dr. Gaeta agreed that Easter had high blood pressure, diabetes and arthritis of the knees and lumbosacral spine, but found no "clearcut evidence" of cerebrovascular disease or coronary heart disease, and no objective basis to support Dr. Marrow's finding of disability. He did, however, find that Easter should be restricted from heavy work due to his hypertension.

5. Easter contends that "the only question before the court that is in dispute is whether [he] should be disqualified from receiving payment on his claim based on an alleged pre-existing condition." He also appears to contend that the Court should not consider evidence "marshalled" by Hartford in connection with the administrative appeal of his claim, citing **Farley v. Arkansas Blue Cross & Blue Shield**, **147 F.3d 774 (8th Cir. 1998)**.

These two contentions appear to be based on the notion that what is under appeal is Hartford's initial decision to deny benefits, the one conveyed to Easter by Hartford's letter of April 25, 2003. The Court believes that this is an erroneous view of the ERISA adjudicative process, which comprises an initial decision which, if not favorable, may be reviewed by one or more administrative appellate bodies before being exhausted and therefore ripe for judicial review.

The Eighth Circuit has recognized "a judicially created"

requirement that a claimant exhaust administrative remedies before seeking judicial review of a denial of benefits, so long as the Plan has "a contractual review procedure that is in compliance with 29 U.S.C. §1133 and 29 C.F.R. §2560.503-1(f) and (g)." **Wert v. Liberty Life Assurance Co. of Boston, Inc., 447 F.3d 1060, 1062-63 (8th Cir. 2006).**

The statute referred to requires "adequate notice in writing . . . setting forth the specific reasons for . . . denial," and "a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." **29 U.S.C. §1133.** The regulation fleshes out the time and manner of the notice that must be given.

The Plan specifies a procedure for administrative review of the initial claims decision. That procedure contemplates submission by the claimant of additional materials in support of his claim, and further contemplates that the "written decision will include specific references to the plan provisions on which the decision is based." It would be illogical to conclude, in the face of these provisions, that the Plan could not employ consultants to review additional materials furnished by the claimant in connection with the administrative appeal, or that the Plan could not refine its bases for denying benefits, if its reviewer found that to be appropriate. Cf. **Wert**, *supra*:

[T]he rationale behind the exhaustion requirement . . .

-8-

> stems from the sound policy of not wanting courts to review plan administrators' decisions based on initial, often succinct denial letters in the absence of complete records. This is important because, in many cases, review is for abuse of discretion on the record considered by the plan decision-maker, and through the review process the parties aid the court by assembling a fact record that will assist the court if judicial review is necessary, and minimizing the likelihood of frivolous lawsuits. Further, [e]xhaustion serves many important purposes - giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing a non-adversarial dispute resolution process, [and] decreasing the cost and time of claims resolution.

**447 F.3d at 1066** (internal quotation marks and citations omitted). Many of the important functions of exhaustion would be thwarted if administrative review existed only to serve the claimant, as suggested by Easter, rather than to serve the decision-making process on behalf of both parties.

For the foregoing reasons, the Court is not persuaded that it is prohibited from considering the documents in the Administrative Record which post-date the initial decision to deny benefits.

6. When the Court considers all the materials in the Administrative Record, it concludes that a reasonable person could have reached the decision reached by Hartford in this case. Easter is clearly afflicted with multiple medical problems, but the evidence that any one of these - or any combination of them - would prevent him from doing his work as a pre-cook is conflicting.

Dr. Hurley was of the opinion that Easter's heart problems

were not disabling.  Dr. Downs stated as his opinion, on July 30, 2002, that Easter could perform his usual work, full-time, so long as he did no heavy work.  Dr. Nix, who treated Easter for diabetes and hypertension, did not offer an opinion that he was disabled, although on one visit Dr. Nix found him to be having headaches, earaches, and dizziness.  Dr. Nix related these findings to Easter's diabetes, and noted that Easter was "really noncompliant," i.e., not following his treatment regimen.

On the other hand, Dr. Marrow and Dr. House considered Easter to be disabled.  Hartford was not required to accept the reports of these physicians over those of other physicians. Cf. **Delta Family-Care Disability v. Marshall**, **258 F.3d 834 (8th Cir. 2001)**("Where the record reflects conflicting medical opinions, the plan administrator does not abuse its discretion in finding the employee not to be disabled.").

The Court also notes that the conflicting opinions were those of Easter's treating physicians.  Thus, although Dr. Gaeta was a reviewing physician, this is not a case of a conflict between a reviewing physician on the one hand, and examining or treating physicians on the other.

For the foregoing reasons, the Court concludes that both the quantity and the quality of the evidence will support Hartford's decision, and that such decision should be affirmed.

**IT IS THEREFORE ORDERED** that **Defendant Flying J. Inc.'s**

**Motion To Dismiss** (document #18) is **granted**, and plaintiff's claims against Flying J. Inc. are hereby **dismissed**.

**IT IS FURTHER ORDERED** that the decision of Hartford Life and Accident Insurance Co. - that Jerome Easter is not eligible for long-term disability benefits under the ERISA benefits plan maintained and administered by his employer, Flying J. Inc. - is **affirmed**.

**IT IS SO ORDERED.**

                                                **/s/ Jimm Larry Hendren**
                                                **JIMM LARRY HENDREN**
                                                **UNITED STATES DISTRICT JUDGE**